STATE OF MISSOURI, APPELLANT, v. GRAYDON CARLSTROM, RESPONDENT.

Springfield Court of Appeals. May 20, 1930.

440

*Corpus Juris-Cyc References: Criminal Law, 16CJ, section 727, p. 396, n. 81; section 742, p. 406, n. 8; 17CJ, section 3470, p. 179, n. 2; Physicians and Surgeons, 48CJ, section 19, p. 1074, n. 75.

*James V. Billings, Stratton Shartel,* Attorney-General, and *A. B. Lovan,* Assistant Attorney-General for appellant.

*Orville Zimmerman* for respondent.

442

*James M. Johnson,* Amicus Curiae.

SMITH, J.—This is a case where the defendant, an osteopath, is charged with practicing medicine, to-wit: Issuing prescriptions for drugs, and medicines, without license to practice medicine, the charge being that of violating section 7334, Revised Statutes 1919.

On the 8th day of July, 1929, the prosecuting attorney of Dunklin County filed his amended information, against the defendant, which omitting caption and verification, is as follows:

"James V. Billings, Prosecuting Attorney within and for the County of Dunklin, in the State of Missouri, upon his hereto appended oath and upon his knowledge, information and belief informs the court and charges that on or about the 7th day of June, A. D., 1928, and from said date until June 1, 1929, at the County of Dunklin, in the State of Missouri, that one Graydon Carlstrom did then and there unlawfully, wrongfully and wilfully practice medicine and thereby attempt to treat the sick or others afflicted with bodily and mental infirmities by the issuance of prescriptions for certain drugs and by the issuance of said drugs, to-wit: Neo-Silvol, Protorgol, and Elix Lacto Pepsin, to said sick or others affected with bodily and mental infirmities, without then and there having a license from the State Board of Health of the State of Missouri, contrary to the form of the statute in such cases made and provided to-wit: Article 1 of Chapter 65, R. S. 1919.

"Against the peace and dignity of the State.

"JAMES V. BILLINGS."

Thereafter, on the 11th day of July, 1929, the defendant filed his verified plea in abatement, which omitting caption and verification is as follows:

"And now comes Graydon Carlstrom in his own proper person, and having seen and heard the information filed herein against him, for plea thereto says that the court should not take cognizance of the said offenses therein specified, and said cause should be abated for the reasons following:

"(1) That he is a bona-fide graduate of the American School of Osteopathy at Kirksville, Missouri, a legally chartered school of osteopathy in Missouri, receiving his diploma from said institution on the 30th day of May, 1925; that on the 13th day of June, 1925, he was duly and regularly licensed by the Board of Osteopathic Examination and Registration of Missouri to practice his profession as an osteopathic physician in Missouri and in all things complied with the requirements of chapter 79 of the Revised Statutes of Missouri for the year 1919 and all thereto providing for the licensing of osteopathic physicians; that on said date said board issued to defendant a certificate or license to so practice his profession in the State of

Missouri; that thereafter, on the 8th day of September, 1926, he duly and regularly registered his certificate or license to practice osteopathy in the office of the Clerk of the County Court of Dunklin County, Missouri, as is required by law, said certificate or license being recorded in physicians register at page 14; that he is now, and was at all the times mentioned in the information filed herein, a duly qualified, licensed and registered osteopathic physician and entitled to practice his profession in Dunklin County, Missouri.

"(2) Defendant further alleges and shows unto the court that in issuing the prescriptions of the drugs mentioned in the information filed herein and by the issuance of the drugs called for in said prescriptions in the treatment of persons afflicted with bodily diseases, to-wit: Neo Silvae, Protargol, and Elix Lacto Pepsin, he was following the system, method or science of treating commonly known as osteopathy, and as taught and practiced by the American School of Osteopathy, of Kirksville, Missouri; that the system, method or science of treating certain diseases (the diseases defendant was treating at the time) known as osteopathy at Kirksville, Missouri, specifically teaches the prescribing and use of the drugs mentioned in the information for the treatment of diseases defendant was treating and for which said drugs were prescribed and used; that said school of osteopathy at Kirksville at which the defendant was educated and from which he graduated teaches the writing of prescriptions for the issuance and use of the drugs and medicines mentioned in the information and that in writing said prescriptions for said drugs and medicines and in the use of same he was following the method, system and science of treating the diseases he was treating known as osteopathy and as then and now taught by the American School of Osteopathy at Kirksville, Missouri; that the practice of osteopathy in Missouri has always called for the use of certain drugs and medicines for certain diseases and that the use of the drugs and medicines for certain diseases and that in the use of the drugs and medicines described in the information he was following and practicing the latest and best known methods of treating such diseases as taught and practiced by Osteopathy in Missouri, and the American School of Osteopathy at Kirksville, Missouri; that such practice is not the prac- of medicine as provided for in article 1 of chapter 65, Revised Statutes for the year 1919, and therefore no offense, known to such article and chapter, has been committed; that under chapter 79 of Revised Statutes for the year 1919, and amendments thereto, he had the right to prescribe and use the drugs and medicines in said information described, and the said Graydon Carlstrom is ready to verify, and prays the court that said information be quashed, and actions therein stated against him abated."

444

On the 16th day of July, 1929, the State, through its prosecuting attorney, filed its demurrer to the plea in abatement, which, omitting caption and signature, is as follows:

"Comes now the plaintiff and for its pleading to the plea of abatement filed by defendant to the amended information in this cause, *demurs* to said plea of abatement, and for the grounds of said demurrer, assigns the following points to-wit:

"(1) That the qualifications, registrations and licenses required by Chapter 79, Revised Statutes 1919, as a matter of comparative construction of law with Chapter 65, Revised Statutes 1919, provides no authority in law for the prescription of said drugs, issuance of any drugs, to treat the sick and others afflicted with bodily or mental infirmities.

"(2) That the conclusions of law of the pleader in said plea of abatement are unfounded in law by a comparative construction of said Chapters of said Revised Statutes.

"(3) That the word 'as taught and practiced by the American School of Osteopathy of Kirksville, Missouri . . .' found in Section 9202 of chapter 79, Revised Statutes 1919, are *'ejusdem generis'* to the term of 'the system, method or science of treating diseases of the human body, commonly known as osteopathy . . .', and do not include the use, prescription of, or issuance of drugs which belongs to the science of *materia medica.*

"(4) That the words 'and such other subjects as the board may require' appearing in section 9204 of said chapter 79 is *ejusdem generis* with osteopathy and embrace no pathology other than osteopathic pathology and does not include examination upon the subjects of *materia medica,* to-wit: 'the science that treats of drugs, the things used in medicine,' and does not purport to authorize the use of, prescription of, or the issuance of drugs to treat the sick and others afflicted with bodily or mental infirmities.

"(5) That the term 'as taught and practiced by the American School of Osteopathy of Kirksville, Missouri,' is a historical term as used in said section 9202, chapter 79, and fixes by the limit of the passage of said statute to the matters and things as then taught and practiced, and does not include matters and things attempted to be taught and practiced by said school since the time of the enactment of said statute, that the terms of the statute limit the operation of such general authorization to the retrospective of the then existing teaching and practice as of the date of the said statute and not otherwise.

"Wherefore plaintiff prays that said plea in abatement be overruled as a matter of law."

Thereafter, on the 15th day of August, 1929, the demurrer was by the court considered and overruled, and the plea in abatement was

considered and sustained and an order made by the court that said cause abate as prayed. On the same day a motion for new trial was filed by the State, which, omitting caption is as follows:

"Comes now the plaintiff on this the 15th day of August, A. D. 1929, and within four days from the date of the decision and judgment of the court, to-wit: On the same day and at the same term of said court, and within the time allowed by law, and files this, its *motion for new trail*, therein, and moved the court to set aside its finding and judgment overruling the demurrer of plaintiff to the plea in abatement filed by defendant, and rendition of judgment sustaining said plea in abatement to amended information herein, and for the grounds of its said motion, assigns the following errors, to-wit:

"1. Because the court erred in finding that the qualifications, registrations and licenses required by chapter 79, Revised Statutes 1919, as a matter of comparative construction of law with chapter 65, Revised Statutes 1919, provides no authority in law for the prescription of drugs, issuance of drugs in the treatment of the sick and others afflicted with bodily or mental infirmities by osteopaths contrary to the law.

"2. Because the court erred in finding that the conclusions of law of the pleader in said plea of abatement is founded in law by a comparative construction of said chapters of said Revised Statutes set out in Paragraph No. 1, herein, contrary to law.

"3. Because the court erred in finding that the words of the statute found in section 9202 of chapter 79, Revised Statutes 1919, to-wit: 'As taught and practiced by the American School of Osteopathy of Kirksville, Missouri . . .' are not *ejusdem generis* to the terms of said statutory definition, to-wit: 'The system, method or science of treating disease of the human body, commonly known as 'osteopathy . . .' and which include the use, prescription of, or issuance of drugs, which treatment belongs exclusively to the science of *materia medica*, contrary to law.

"4. Because the court erred in finding that the words 'and such other subjects as the board may require' found in section 9204 of said chapter 79, is not *ejusdem generis* with osteopathy, and embraces and includes pathology other than osteopathy pathology, and that the subjects of *materia medica*, to-wit: 'The science that treats of drugs, the things used in medicine,' and does thereby authorize the use of, prescription of, and the issuance of drugs to treat the sick and others afflicted with bodily or mental infirmities, contrary to law.

"5. Because the court erred in finding that the term as 'taught and practiced by the American School of Osteopathy of Kirksville, Missouri,' is not a historical term as used in said section 9202, chapter 79, and fixes by the limit or date of the passage of said act passed in

1899, to the matters and things as then taught and practiced, and as the term osteopathy was then understood and known, and includes matters and things attempted to be taught and practiced by said school since the time of the enactment of said statute, and that the terms of the statute do not limit the operation of such general authorization to the then retrospective existing teaching and practicing as of the date of the said statute and that said term has a prospective application to whatever may be taught and practiced therein in the use of, prescription of and issuance of drugs, contrary to law.

"Wherefore, plaintiff prays the court to set aside its holding, finding, and judgment in overruling the demurrer of plaintiff, and sustaining the plea in abatement to said information, and order the cause to proceed to trial upon said amended information."

On the 15th day of August, 1929, the motion for new trial was by the court overruled and proper steps were taken for an appeal to this court.

This case has attracted considerable interest throughout the State on the part of the medical profession, as well as the osteopathic profession. After the case was appealed and submitted to this court at its Poplar Bluff call in November, 1929, where arguments were made for the plaintiff by the prosecuting attorney of Dunklin County and for the defendant by his attorney, a request was made by the attorney-general for permission to file supplemental briefs for the State and then Hon. James M. Johnson, counsel for the Missouri State Association for Osteopaths asked permission and was granted leave to file a brief *amicus curiae*, and thereafter the attorney of record for the defendant requested and was given permission to file a reply brief and the cause was again argued at the January, 1930 Call Term of this court at Springfield.

As we view this case from the points raised in the additional briefs before us there are many points that are sought to be considered which the record precludes our considering.

The information is not questioned. The law that the defendant is charged with having violated is not attacked, and the validity or constitutionality of the statute under which the defendant attempts to justify is not questioned; of course, if the constitutionality of the statute were raised, this court would be without jurisdiction. So we surmise that our conclusions in this case will not satisfy the many who are interested. It will not satisfy the medical profession nor the osteopathic profession, since it seems to be their desire that we determine the limits to which an osteopath may go and beyond which he may not go in the practice of his profession. We are bound by the record made in this case, and it is not a good precedent for this court, or any other court as for that matter, to go outside the record to

determine questions to satisfy interested parties, where those questions are not properly raised in the record.

The record before us shows that an information was filed charging the defendant with unlawfully practicing medicine, and attempting to treat the sick by the issuance of prescriptions for, and by the issuance of certain drugs to-wit: Neo-Silvol, Protorgol, and Elix Lacto Pepsin, to sick persons, without having a license from the State Board of Health of the State of Missouri, as provided by article 1 of chapter 65 of the Revised Statutes of Missouri, 1919.

The defendant filed a plea in abatement, heretofore set out in full. Stripped of its verbiage this plea asserts that the court should not take cognizance of the alleged offence, and the cause should be abated because the defendant is a graduate of the American School of Osteopathy at Kirksville, and is duly licensed by the Board of Osteopathic Examinations and Registrations of Missouri to practice as an osteopathic physician in Missouri, and in all things complied with the requirements of chapter 79, Revised Statutes 1919, and all amendments thereto, providing for the licensing of osteopathic physicians; that his license was registered in the office of the clerk of the county court of Dunklin county.

He further pleaded that in the issuance of the prescriptions mentioned in the information he was following the system, method, or science of treating known as osteopathy as taught and practiced by the American School of Osteopathy of Kirksville; that the system known as osteopathy and as taught and practiced by that school teaches the prescribing and use of the specific drugs mentioned in the information for the disease the defendant was treating and for which said drugs were prescribed and used, and that said school teaches the writing of prescriptions for the issuance and use of the drugs and medicine mentioned in the information, and that in writing said prescriptions for said drugs and medicines and in the use of the same he was following the system known as osteopathy, and as then and now taught by the American School of Osteopathy at Kirksville; that the practice of osteopathy in Missouri has always called for the use of said drugs and medicines for certain diseases, and that in the use of the drugs and medicines described in the information, he was following and practicing the latest and best known methods of treating such diseases as taught and practiced by said school; that such practice is not the practice of medicine as provided in article 1, chapter 65, Revised Statutes 1919, and that no offence known to such article has been committed; that under chapter 79, Revised Statutes 1919, and amendments thereto, he had the right to prescribe and use the drugs and medicines metioned in said information.

The demurrer states that the qualifications, registrations and licenses required by chapter 79, Revised Statutes 1919, provided no

authority in law for the prescriptions of said drugs or the issuance of any drugs to treat the sick and afflicted. That the conclusions of law pleaded in the plea in abatement are unfounded by a comparative construction of chapters 65 and 79, Revised Statutes 1919.

That the words "as taught and practiced by the American School of Osteopathy at Kirksville, Missouri" are *ejusdem generis* to the term of "the system, method or science of treating diseases of the human body commonly known as osteopathy," and do not include the use, prescription of or issuance of drugs which belong to the science of *materia medica*. That the words "and such other subjects as the board may require," appearing in section 9204, Revised Statutes 1919, are "*ejusdem generis*," with osteopathy, and embrace no pathology other than osteopathic pathology, and do not include examinations upon the subject of *materia medica*, and do not purport to authorize the use of prescriptions of, or issuance of drugs to treat the sick and afflicted.

That the term "as taught and practiced by the American School of Osteopathy at Kirksville" is a historical term as used in section 9202, Revised Statutes 1919, and fixes the limit of the passage of the said statute to the material things as then taught and practiced, and do not include matters and things taught and practiced by said school since the time of the enactment of said statute, and that the statute limits the authorization, to the then existing teaching and practice as of the date of the said statute and not otherwise.

We must not lose sight of the fact in this case that the defendant is charged with violating the criminal statute by writing a prescription for certain drugs specifically named in the information. The question for us to decide is, not what general rights or privileges an osteopathic physician has under our statutes, although it seems the representatives of the State have tried by their briefs and arguments to lead us into that field, but whether or not under the facts shown here the defendant is guilty of violating the criminal statute. It is admitted by the demurrer that the defendant was a regularly licensed osteopathic physician in Dunklin county at the time of the alleged offence. He therefore had a right to practice in that county the system known as osteopathy. He alleged in his plea in abatement that he was so practicing at the time. He alleged that "the system . . . known as osteopathy . . . specifically teaches the prescribing and use of the drugs mentioned in the information," and that in issuing the specific prescriptions he was within the system of osteopathy and that since he was practicing the system of osteopathy, because of the provisions of section 9202, Revised Statutes 1919, he was not practicing medicine.

While there may be some conclusions of law pleaded in the plea in abatement, yet we think the questions of fact pleaded and admitted

by the demurrer are determinative of this case. What is the effect of a demurrer anyway? The general rule as to what a demurrer admits is stated as follows: "Since the sole issue raised by demurrer is as to the legal sufficiency of the facts alleged in the pleading of an opponent the demurrant must be held to admit the truth of all such facts provided they are material, relevant and well pleaded. The facts, if well pleaded and sufficient, are admitted, not because the demurrer admits them, expressly, or by force of any office it performs, but because the pleader has not denied and has defaulted therein." [6 Ency. in Pleadings & Practice, 334.] And our courts have repeatedly held that a demurrer admits the truth of all facts properly pleaded. [Anderson v. Inter-River Drainage and Levy District, 309 Mo. 189, 274 S. W. 448; Body v. St. Louis Brewing Association, 318 Mo. 1206, 5 S. W. (2d) 46.]

The question was properly submitted to the court by the verified plea in abatement. [Sec. 3959, R. S. 1919; State v. Martin, 230 Mo. 1, 129 S. W. 931.]

Section 9202, Revised Statutes 1919, specifically states that the system of treating diseases of the human body known as osteopathy and as taught and practiced by the American School of Osteopathy at Kirksville is declared not to be the practice of medicine and surgery within the meaning of article 1 of chapter 65.

The plea in abatement used practically the same language of the statute in alleging what the defendant was doing and we think the demurrer admits it. The plea in abatement alleged that the system of osteopathy teaches and uses and has always taught and used as a part of its system the particular drugs mentioned in the information, and the demurrer admits it, so what else was the trial court to do but to sustain the plea in abatement?

It was not, under these pleadings, for the trial court to say that an osteopathic physician had a right under the law to prescribe these particular drugs, for we think the State admitted it by its demurrer, and we think it is not for us to say now whether the facts pleaded in the plea in abatement are true or not. In other words we think a determination of this case does not settle and cannot settle how far an osteopathic physician may go in writing prescriptions and issuing drugs in his profession, and we do not mean for this opinion to be construed as holding that an osteopathic physician has an unlimited right to prescribe and issue drugs. We are simply saying that under the pleadings as submitted here the court did not err in sustaining the plea in abatement.

The prosecuting attorney in his demurrer alleges that the term "as taught and practiced by the American School of Osteopathy at Kirksville, Missouri," is a historical term as used in said section and that the terms of the statute limit the operation of such general au-

thorization to the retrospective of the then existing teaching and practice as of the date of statute and not otherwise. This point was briefed by the prosecuting attorney and the defendant contends that section 9202 cannot be interpreted as limiting osteopaths as to what was taught and practiced in the American School of Osteopathy at Kirksville in 1897, the date of the enactment.

Again we say that a determination of this case does not require us to fix the limits beyond which an osteopath may not go in the use of drugs, for in the plea in abatement we find this language: "The School of Osteopathy at Kirksville . . . teaches the writing of prescriptions for the issuance and use of the drugs and medicines, mentioned in the information, and in writing said prescriptions . . . he was following the method . . . known as osteopathy as then and now taught by the American School of Osteopathy . . .; the practice of osteopathy in Missouri has *always* called for the use of certain drugs . . . and that in the use of the drugs and medicine described in the information he was following . . . methods taught and practiced by Osteopathy in Missouri and the American School of Osteopathy at Kirksville." The word *"always"* means "at all times," and by the use of that word the plea in abatement alleged that Osteopathy taught the use of the particular drugs mentioned in the information, not only at the time of the alleged offence, but also at the date of the enactment of the statute, section 9202, in 1897, and that allegations in the plea in abatement is not a conclusion in law but is a fact pleaded and one admitted by the demurrer, and such an admission that bound the trial court, and since such fact is pleaded and admitted, it is not necessary to a proper determination of this case for us to pass on the question as to how far the American School of Osteopathy at Kirksville may go in teaching the use of drugs, nor is it necessary for us to say how far the defendant, or other registered osteopathic physicians may go in the practice of that system, and we are not attempting to so say in this opinion. The prescribing of the qualifications of osteopathic physicians and the regulations of the practice of that profession are matters wholly for the Legislature.

It follows that the judgment should be affirmed. It is so ordered. *Cox, P. J.*, and *Bailey, J.*, concur.